1    JOSHUA G. GENSER, State Bar No. 111526
     Genser & Watkins, LLP
2    125 Park Place, Suite 210
     Point Richmond, CA 94801
3    Telephone: (510) 237-6916
     Facsimile: (510) 236-9851
4

5    Attorney for Plaintiff Faiyaz Khan

6

7             **UNITED STATES DISTRICT COURT**

8            **NORTHERN DISTRICT OF CALIFORNIA**

9

10    FAIYAZ KHAN and REHANA A.
     KHAN,

| | |
|---|---|
| FAIYAZ KHAN and REHANA A. KHAN, | Case No.  4:11-cv-03853-LB |
| Plaintiff, | Hon. Laura Beeler |
| v. | **OPPOSITION TO MOTION TO DISMISS** |
| BANK OF AMERICA, N.A., BAC HOME LOANS SERVICING, L.P., and DOES 1 through 10. | Date:         October 6, 2011 |
| Defendants. | Time:         11:00 a.m. |
| _____/ | Location:    Ctrm. 4, 3rd Floor |
| | Action Filed: July 5, 2011 |
| | Trial Date:   None Set |

11                     Plaintiff,

12          v.

13    BANK OF AMERICA, N.A.,
     BAC HOME LOANS SERVICING, L.P.,
14    and DOES 1 through 10.

15

16                     Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO DISMISS**        --

INTRODUCTION ..................................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................................1

LEGAL ARGUMENT ...........................................................................................................................2

1.      The First Amended Complaint adequately alleges tender of payments sufficient to bring the loan, as modified, current.2

2.      The defendants are estopped or have waived strict adherence to the conditions of acceptance of the lender's offer of a loan modification. .....................................................................................................................4

3.      The offer letter and its acceptance constitute a valid, binding and enforceable contract. ......................5

    A.      The loan modification agreement is not any less enforceable because performance requires that the parties will sign additional documents and take additional steps. ....................................................6

    B.      Nothing in the loan modification agreement gives any indication that the loan modification is to be anything less than permanent. ...........................................................................................................7

    C.      The loan modification agreement complies with the Statute of Frauds or is exempt. ........................7

4.      The First Amended Complaint states a cause of action to set aside the Trustee's Sale based on the fact that the Trustee was not the Trustee at the time it filed the Notice of Default. .............................................................8

    A.      The documents of which judicial notice may be taken do not establish as a matter of undisputed fact or of law that the Trustee was the Trustee when the Notice of Default was executed and recorded. ......................8

    B.      A Notice of Default executed, served and recorded by a non-trustee is defective. ...........................9

5.      The First Amended Complaint alleges sufficient facts to support the issuance of an injunction. .........9

6.      The Action should not be dismissed where the Third Cause of Action alleges sufficient facts to state a cause of action for slander of title. ..............................................................................................................10

7.      The First Amended Complaint alleges facts sufficient to support an award of punitive damages. ....................11

8.      The First Amended Complaint alleges facts sufficient to support an award of attorneys' fees. ...........................12

9.      The Lis Pendens should not be expunged where the First Amended Complaint alleges a claim of title to real property.12

CONCLUSION .....................................................................................................................................12

OPPOSITION TO MOTION TO DISMISS    --   i

## Cases

*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109 ......................................................3

*Alicea v. GE Money Bank*, 2009 U. S. Dist LEXIS 60813 (N.D. Cal. 2009) ..............................................3

*Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 579-580 ............................................3

*Atkinson v. Pacific Fire Extinguisher Co.* (1953) 40 Cal.2d 192 ...........................................................5

*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279 ...............................................................5

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ..................................................................10

*Ferguson v. Avelo Mortgage, LLC* () 195 Cal.App.4th 1618, 1628 .........................................................9

*G.D. Searle & Co. v. Superior Court* (1975) 49 Cal.App.3d 22, 29 .......................................................12

*Humboldt Savings Bank v. McCleverty* (1911) 165 Cal. 285, 291 ..........................................................2

*In re Kossack*, 113 F.Supp, 884, 888 (N.D.Cal. 1953) .....................................................................7

*In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517 (4th Cir. 2003) ...............................................10

*Ins Co. v. Young's Adm'r*, 90 U.S. 85 (1874) ...............................................................................4

*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316 ....................................................................10, 11

*Karlsen v. American Savings and Loan Association* (1971) 15 Cal.App,.3d 112, 118 ....................................4

*Los Angeles v. Superior Court* (1959) 51 Cal.2d 423, 433 .................................................................6

*Metts v. Central Standard Life Ins. Co.* (1956) 142 Cal.App.2d 445, 451 ...............................................4

*Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999 (6th Cir. 2006) ...............................................10

*Smith v. Superior Court* (1992) 10 Cal.App.4th 1033 .....................................................................12

*United States Cold Storage of California v. Great Western Savings and Loan Association* (1985) 165 Cal.App.3d 1214 ...............3

*Warren v. Merrill* (2006) 143 Cal.App.4th 96, 113 .........................................................................8

## Statutes

California Civil Code Section 2076 .............................................................................................5

California Civil Code Section 2934a(b) .........................................................................................9

California Civil Code Section 3421 ............................................................................................10

California Civil Code Section 3422 .............................................................................................9

Statute of Frauds (California Civil Code Section 1624) .......................................................................7

**OPPOSITION TO MOTION TO DISMISS**      --   ii

**INTRODUCTION**

Defendant Bank of America voluntarily entered into a contract with plaintiffs to modify a loan, and all parties operated for a year under the terms of the modified loan, with full performance by all parties. Suddenly, and without any prior warning, the Bank started foreclosure proceedings, without giving any notice to plaintiffs of any rejection of or objection to the loan modification agreement. Even after plaintiffs' legal counsel began to correspond with the Bank, the only objection made by the Bank to the legitimacy of the agreement was that the acknowledgement of the plaintiff's signature was one day after the signature, itself, had been affixed. Obviously conceding that argument as invalid, it is the only argument omitted from defendants' scattershot motion desperately seeking some way out of the contract that it had created. None of defendants' arguments have merit, and the First Amended Complaint states sufficient facts to support the relief requested. The Motion to Dismiss should be denied in its entirety.

**FACTUAL BACKGROUND**

Plaintiffs Faiyaz Khan and Rehana A. Khan were the owners of real property, a single-family residence, Pinole, Contra Costa County, California. Defendant Bank of America was the Beneficiary of a Deed of Trust on the Property securing a loan from Bank of America to Plaintiffs. On September 15, 2009, Bank of America made a written offer to Plaintiffs to enter into an agreement whereby the loan secured by the Deed of Trust would be modified. Plaintiffs accepted that offer, thus creating a contract binding on both parties. A copy of Bank of America's offer and Plaintiffs' acceptance is attached as Exhibit A to the First Amended Complaint.

Plaintiffs sent to Bank of America the payments called for in the loan modification agreement for about a year, and Bank of America accepted those payments without protest, until, suddenly and without warning, the Bank began to reject the payments as inadequate, and, on September 17, 2010, a Notice of Default was recorded. The Notice of Default was prepared and recorded by Recontrust Company, four days before the Substitution of Trustee by which it became Trustee was executed, and six days before that Substitution of Trustee was recorded. That Notice of Default was based on the difference between the payments Plaintiffs had been sending to Bank of America and the amount of the monthly payments that had been due prior to the loan modification.

**OPPOSITION TO MOTION TO DISMISS      --   1**

Plaintiffs' counsel then had extensive communications with an ombudsman from Bank of America, who eventually took the position that the loan modification agreement was invalid because plaintiff's signature was notarized the day after plaintiff signed.

Eventually, a Trustee's Sale was held and the property was purchased by Bank of America or by BAC Home Loans Servicing, L.P.

**LEGAL ARGUMENT**

**1.      The First Amended Complaint adequately alleges tender of payments sufficient to bring the loan, as modified, current.**

Plaintiff points out, correctly, that a Trustee's Sale will not be set aside unless the plaintiff has tendered to the foreclosing lender payment to satisfy the debt secured thereby.  This is merely an application of the rule that "he who seeks equity must do equity."  *Humboldt Savings Bank v. McCleverty* (1911) 165 Cal. 285, 291.  The question that is not answered in the Motion to Dismiss are whether the requirement of "tender" requires that the plaintiff tender payment in full of the entire unmodified obligation, payment in full of the modified obligation, or merely payment of any payments rejected by defendant since defendant began rejecting them in order to bring the modified account current.  Here, the First Amended Complaint alleges that plaintiff is "ready willing and able" to do the latter (paragraph 14), adequately alleging both equity, in general, and tender, specifically. Plaintiff is not required, in order to satisfy the requirement of tender, to have offered to pay off the entire unmodified amount of the loan, nor, even, in these circumstances, the entire amount of the loan as modified.  As the Supreme Court noted in *Humboldt Savings Bank v. McCleverty, supra,* 165 Cal. 285, 291, "it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale."  In that case, the party seeking to set aside the Trustee's Sale was not the debtor, but was the owner of one of the properties that had been security for the debt.  The property the plaintiff sought to rescue from foreclosure was worth less than ten percent of the amount of the debt.  The Supreme Court held that he plaintiff was not required to have tendered payment of the debt.  Here, if plaintiff were to prevail, the amount of the modified debt would be much less than the amount due on the original promissory note, so it would be inequitable to require that the plaintiff have tendered payment of the entire unmodified debt in order to

1   have his day in Court.  Also, if plaintiff were to prevail, plaintiff would not have been in default at the

2   time defendants began rejecting payments and beginning the foreclosure process, so it would be

3   inequitable to require that plaintiffs pay off even the modified loan in its entirety.

4           None of the cases cited by defendant are authority for any contrary interpretation of the

5   "tender" requirement:

6           In *Alicea v. GE Money Bank*, 2009 U. S. Dist LEXIS 60813 (N.D. Cal. 2009), the Court

7   granted a motion to dismiss a challenge to a foreclosure on the grounds of lack of tender, noting,

8   "When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken

9   place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause

10  of action for wrongful foreclosure."  In the present case, in contrast, the plaintiff was not in default

11  when the foreclosure took place, or, if he was, it was only because the lender rejected payments made

12  in reliance on the loan modification.

13          *United States Cold Storage of California v. Great Western Savings and Loan Association*

14  (1985) 165 Cal.App.3d 1214, held merely that the then-recent case of *Arnolds Management Corp. v.*

15  *Eischen, infra*, which had held that the tender requirement applies also to junior lienholders

16  challenging a foreclosure by a senior lienholder did not apply retroactively.

17          In *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109, the Court noted that,

18  "appellants are required to allege tender of the amount of United's secured indebtedness in order to

19  maintain any cause of action for irregularity in the sale procedure."  In that case, there was no dispute

20  that the plaintiffs were in default, and plaintiffs' claims were only that the lender had not followed

21  proper procedure in the foreclosure.  Here, in contrast, the claim is that the plaintiffs were not in

22  default, at all, not that there was anything procedurally defective in the foreclosure.  Moreover,

23  nowhere in the *Abdallah* case does there appear any discussion of whether the tender requirement

24  applies whenever there is a cause of action "implicitly integrated" with the foreclosure sale.

25          *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 579-580, established that,

26  in California, a junior lienholder challenging the foreclosure by a senior lienholder must allege tender

27  of payment in full of the senior obligation.  The junior lienholder did allege that it offered to reinstate

28  the senior lienholder's loan on mare favorable terms, but the Court ruled that was insufficient, because

**OPPOSITION TO MOTION TO DISMISS**   -- 3

the junior leinholder had several opportunities to cure the default prior to the trustee's sale, as provided by statute, and failed to do so.  Here, the plaintiffs had no opportunity to cure the default, because they were not in default, except to the extent the defendant rejected their payments, and requiring that the plaintiffs re-offer the rejected payments would be futile and inequitable, as would requiring them to pay off the entire loan balance.

In *Karlsen v. American Savings and Loan Association* (1971) 15 Cal.App,.3d 112, 118, the Court of Appeal affirmed judgment in favor of the foreclosing lender because, as a matter of fact established at trial, not on the pleadings, the "tender" offered by the plaintiff was insufficient. Plaintiff's, here, have adequately alleged tender of the payments defendants rejected, sufficient to bring the modified account current, and that is sufficient.

**2.      The defendants are estopped or have waived strict adherence to the conditions of acceptance of the lender's offer of a loan modification.**

Defendants argue that there was no contract between plaintiffs and defendant to modify the loan because plaintiffs' acceptance of the defendant's offer did not comply strictly with the conditions stated in the offer in that the acceptance was one day late and was not signed by one of the borrowers. The Bank, however, by accepting plaintiffs' reduced payments without objection or notice of their inadequacy for a year is estopped from arguing that these minor defects, in retrospect, meant that there was no contract, at all.

Firstly, it should be noticed that the Bank's offer was addressed only to plaintiff Faiyaz Khan. It is, thus, a triable issue whether the signature of Faiyaz Khan was sufficient or whether it was, indeed, a condition of acceptance that Rehana Khan also sign.

The defendants cite no authority for their proposition that strict adherence to the conditions of acceptance of the Bank's offer was required to create a binding contract.  The law is to the contrary: an offer may be accepted by "substantial" compliance with the terms of the offer.  *Ins Co. v. Young's Adm'r*, 90 U.S. 85 (1874); *Metts v. Central Standard Life Ins. Co.* (1956) 142 Cal.App.2d 445, 451. Whether there is substantial compliance is a question of fact, based, inter alia, on questions of how important was such strict compliance to the offeror.  *Metts, Ibid.*  The defects in plaintiffs' acceptance of the Bank's offer are *de minimus*, and "The law disregards trifles." (California Civil Code Section

**OPPOSITION TO MOTION TO DISMISS      --     4**

1   3533.)

2          Even if strict compliance were required, the defendant waived that requirement by accepting

3   plaintiffs' payments for a year without protest or notice of their inadequacy.  (California Code of Civil

4   Procedure Section 2076.)   In *Atkinson v. Pacific Fire Extinguisher Co.* (1953) 40 Cal.2d 192, the

5   defendant was found to have waived strict compliance with the requirement of timely payments by the

6   plaintiff because it had accepted late payments on a number of occasions without demanding strict

7   compliance or invoking any of its remedies on default.  In fact, the Bank never cited these specific

8   deficiencies prior to the foreclosure, even when its ombudsman was negotiating with plaintiffs' counsel

9   (First Amended Complaint, paragraphs 9 & 10).

10         Defendants are also equitably estopped from denying that there was a valid contract for the

11  modification of the loan.  "The doctrine of equitable estoppel is founded on concepts of equity and fair

12  dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led

13  another to believe a particular circumstance to be true and to rely upon such belief to his detriment.

14  The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he

15  must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has

16  a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and

17  (4) he must rely upon the conduct to his injury."  *City of Goleta v. Superior Court* (2006) 40 Cal.4th

18  270, 279.  Here, the Bank knew that the plaintiffs had not complied strictly with the conditions of the

19  offer of the loan modification, but the Bank never notified plaintiffs that it considered the loan

20  modification to be a nullity, and the plaintiffs, in ignorance, made a year's worth of the payments

21  required under that modification agreement.  The Bank offered the modification to the plaintiffs with

22  the intention that they act thereon, and plaintiffs were, indeed, induced to act thereon.

23         The First Amended Complaint states a cause of action against the defendants for breach of the

24  loan modification agreement, and it should not be dismissed.

25         **3.      The offer letter and its acceptance constitute a valid, binding and enforceable**

26  **contract.**

27         Defendants make several separate arguments that the offer letter and plaintiffs' acceptance do

28  not constitute a contract:

**OPPOSITION TO MOTION TO DISMISS      --   5**

A.    That the offer letter, itself, contemplated that the Bank would take additional steps to modify the loan and that the plaintiffs might be required to sign additional documents, none of which occurred.

B.    That the offer letter did not contemplate a "permanent loan modification."

C.    That the offer letter is invalid under the statute of frauds because it was not signed by the Bank of America.

None of those arguments have merit.

**A.    The loan modification agreement is not any less enforceable because performance requires that the parties will sign additional documents and take additional steps.**

A contract is sufficiently enforceable if it sets forth the essential terms of the transaction, even if there are other terms omitted or to be agreed later.  As the Court said in *Los Angeles v. Superior Court* (1959) 51 Cal.2d 423, 433, "The contract is claimed to be void because it contains promises to agree in the future. The general rule is that if an "essential element" of a promise is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement is made. The enforceability of a contract containing a promise to agree depends upon the relative importance and the severability of the matter left to the future; it is a question of degree and may be settled by determining whether the indefinite promise is so essential to the bargain that inability to enforce that promise strictly according to its terms would make unfair the enforcement of the remainder of the agreement. Where the matters left for future agreement are unessential, each party will be forced to accept a reasonable determination of the unsettled point or if possible the unsettled point may be left unperformed and the remainder of the contract be enforced." (Citations omitted.) The loan modification agreement sets forth all of the essential terms of the agreement (Exhibit A to the First Amended Complaint, page 2): the new principal balance of the loan, the formula for determining the interest rate. the maturity date, the monthly payment, and that all terms of the existing mortgage not altered by the modification agreement remain effective.  In fact, despite defendants' protestations in their Motion to Dismiss, there are no agreements to agree in the future in the loan modification agreement.

The portions of the loan modification agreement to which defendants point in their Motion to

Dismiss do not, *prima facie*, indicate that any of the essential terms of the agreement are missing or to be determined later. The sentence that says, "...we will cease any collection activity when the mortgage is modified,"(Motion, page 6, line 8) means only that the Bank will cease its collection activity upon the acceptance of the offer by the plaintiffs. The sentence that provides that the modification is not a waiver of the Bank's collection rights (Motion, page 6, line 10) means only that the Bank retains all of its rights in the event of a default by the plaintiffs under the terms of the modified loan. The plaintiffs' promise to sign any further documents necessary to effectuate the transaction (Motion, page 6, line 13) is only a standard promise to cooperate in making the deal happen.

**B.      Nothing in the loan modification agreement gives any indication that the loan modification is to be anything less than permanent.**

Defendants insist that, on the face of the loan modification agreement, it can be determined that "it would not constitute a permanent loan modification." Frankly, plaintiffs do not even know what is meant by that argument. Perhaps defendants are arguing that, under the agreement, the Bank would have had the right to revert at some future date to the former, unmodified terms. There is nothing in the agreement to support that and that would be inconsistent with the provision of a new, extended maturity date and lower principal balance.

**C.      The loan modification agreement complies with the Statute of Frauds or is exempt.**

The loan modification agreement complies in all respects with the Statute of Frauds (California Civil Code Section 1624). The agreement is in writing and it is subscribed by the party, Bank of America, to be charged with its breach. Defendants, in arguing that the loan modification agreement does not comply with the Statute of Frauds, state, "Plaintiffs fail to allege that BofA as the drafter of the offer letter ever signed the paperwork." (Motion, page 7, line 9.) Presumably, defendants are arguing that the apparent absence of any hand-written signature at the bottom of the first page of the offer letter (Exhibit A to the First Amended Complaint, page 1) means that the agreement is not "subscribed" by the Bank. That is not the law. As the Court said in I*n re Kossack*, 113 F.Supp, 884, 888 (N.D.Cal. 1953), "Since the verb 'subscribed' is not a word of art under California law, The statute of frauds does not demand that the signature of the party to be charged be placed at the end of the

**OPPOSITION TO MOTION TO DISMISS      --   7**

1  writing relied upon if a proper signature be found elsewhere on the instrument. * * * Furthermore the
2  signature need not be manually affixed, but may in some cases be printed, stamped or typewritten.'"

3       Part performance by one party to a contract removes that contract from the Statute of Frauds.
4  *Warren v. Merrill* (2006) 143 Cal.App.4th 96, 113.  In that case, a broker helped a credit-challenged
5  buyer qualify for a loan by using the broker's daughter as the nominal borrower and buyer.
6  Subsequently the broker and daughter evicted the buyer from this property.  The buyer sued, and the
7  broker and daughter cited the absence of any written agreement and the statute of frauds as a defense.
8  The trial court and the Court of Appeal rejected the Statute of Frauds defense on several grounds, but
9  the Court of Appeal noted that, "Warren's part performance of the oral contract by paying $ 77,000 for
10  the down payment on the condominium would satisfy the statute of frauds in any event."

11       The Statute of Frauds, then, does not bar plaintiffs' causes of action.

12       **4.       The First Amended Complaint states a cause of action to set aside the Trustee's**
13  **Sale based on the fact that the Trustee was not the Trustee at the time it filed the Notice of**
14  **Default.**

15       The Second Cause of ACtion of the First Amended Complaint states a Cause of Action.  Its
16  title, "Injunction," is, indeed, the primary remedy sought thereby instead of the primary right violated
17  by the defendants as alleged therein, but an inappropriate title does not render the cause of action
18  subject to dismissal.

19       More substantively, defendants argue that the Second Cause of Action does not state a cause of
20  action for two reasons:

21       A.       That documents of which this Court may take judicial notice show that the Substitution
22            of Trustee was executed simultaneously with the notice of default; and

23       B.       That the trustee could record a Notice of Default even if it were not actually the
24  Trustee,                as an authorized agent of the beneficiary.
25  Neither argument has merit:

26       **A.       The documents of which judicial notice may be taken do not establish as a matter**
27  **of undisputed fact or of law that the Trustee was the Trustee when the Notice of Default was**
28  **executed and recorded.**

**OPPOSITION TO MOTION TO DISMISS       --   8**

The Substitution of Trustee (Exhibit C to Defendants' Request for Judicial Notice) bears the typewritten date of September 16, 2010, but the acknowledgment is dated September 21, 2010, five days later.  That raises a factual question that cannot be answered on the face of the pleadings or with reference to judicial notice of whether the document was actually executed on the 16th.

Moreover, California Civil Code Section 2934a(b) requires that, "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."  Nothing in the pleadings nor on the face of the documents of which this Court has been asked to take judicial notice establish compliance with this statute.

### B.  A Notice of Default executed, served and recorded by a non-trustee is defective.

In *Ferguson v. Avelo Mortgage, LLC* () 195 Cal.App.4th 1618, 1628, the entity that executed the Substitution of Trustee, substituting Quality Loan Service for First American Title, was not, at that time, the beneficiary.  The Court noted that, under those circumstances, "Quality initiated the foreclosure proceedings when it was not the trustee and therefore had no legal right to do so," and that, "Quality's August 3, 2007 notice of default was defective."  Thus, here, the Notice of Default executed by ReconTrust when it was not yet the Trustee was also defective.

Defendants claim that, even if Recontrust was not the Trustee at the time it executed and filed the Notice of Default, it could nevertheless do so as an "authorized agent" of the Beneficiary.  There is nothing on the face of any pleading nor of any document of which Judicial Notice has been requested to establish such agency.

### 5.  The First Amended Complaint alleges sufficient facts to support the issuance of an injunction.

California Civil Code Section 3422 authorizes the issuance of a final injunction to prevent the breach of an obligation existing in favor of the applicant where, *inter alia* (at subsection 1), "pecuniary

compensation would not afford adequate relief."  That is alleged in paragraph 17 of the First Amended Complaint (which is in the First Cause of Action but which is incorporated into the Second).

The cases cited by defendants in support of their proposition that more is required in order for an injunction to issue are inapposite.  Both *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517 (4th Cir. 2003), and *Ne. Ohio Coal. for Homeless v. Blackwell*, 467 F.3d 999 (6th Cir. 2006), involve provisional injunctions, not final ones, and the rules for provisional injunctions are different than those for final injunctions (California Civil Code Section 3421).  The First Amended Complaint seeks a final injunction.

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006), involves a final injunction issued under Federal Law, the Patent Act, and the Court noted that the Patent Act, itself, had no provisions for issuance of injunctions that would alter the general rules of equity applied by Federal Courts to the question of issuance of injunctions.  The Court noted that the Patent Act provided that injunctions ""may" issue "in accordance with the principles of equity.""  (*Id*. at 391-392.)  Here, in contrast, there is a statute that specifies what is required for issuance of a final injunction and what is specified is different than the requirements of Federal common law.

**6.    The Action should not be dismissed where the Third Cause of Action alleges sufficient facts to state a cause of action for slander of title.**

The First Amended Complaint alleges all of the elements of a cause of action for Slander of Title:

- A publication, the Trustee's Deed (First Amended Complaint, paragraphs 12 & 22),
- Which is without privilege or justification, having been issued following a defective foreclosure because the Trustee was not the Trustee when the Notice of Default was filed and because the Trustors were not in default at the time the Notice of Default was filed (First Amended Complaint, paragraphs 7, 16 & 22),
- Which is false, because the defective foreclosure renders the deed void or voidable (First Amended Complaint, paragraph 20), and
- Which has caused direct and immediate pecuniary loss, the loss of plaintiffs' property (First Amended Complaint, paragraphs 12 and 17).

**OPPOSITION TO MOTION TO DISMISS**        --   10

Defendants argue, however, that the publication of nonjudicial foreclosure notices is privileged, citing *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316.  What defendants fail to point out is the *Kachlon* Court found that the Trustee's publication of those notices was privileged, but that the beneficiary's participation in the publication was not.

*Kachlon* was a dispute over whether the underlying debt had been paid.  The plaintiffs/debtors prevailed.  They had sued the beneficiaries of the deed of trust and the trustee for, inter alia, slander of title.  The Court of Appeal ruled that the filing of the Notice of Default was conditionally privileged, and that the Trustee in this case was immune from liability therefor because there was no evidence that the Trustee acted with malice.  (*Id*. at 343-344.)  Of the beneficiaries, however, the Court noted that they had "failed to explain how their conduct in bringing about the nonjudicial foreclosure -- presenting to Best Alliance written instructions, a declaration of default, and a demand for sale -- may be construed as notices required by statute or as the procedures set forth in the statutory scheme." (*Id*. at 345.)  Moreover, said the Court, even if the beneficiaries' acts were subject to the qualified privilege, the jury had found them to have acted with malice, in "reckless disregard for the Markowittzes' rights." (*Ibid*.)

Here, the Trustee is not a defendant, only the beneficiary.  The First Amended Complaint alleges sufficient facts to establish, if proven, that the Bank acted with malice, in reckless disregard of the plaintiffs' rights, in proceeding with a foreclosure with actual prior knowledge that the Trustee was not authorized to file the Notice of Default and that the Trustors were not actually in default when the Notice of Default was filed.  (First Amended Complaint, paragraph 22.)

**7.      The First Amended Complaint alleges facts sufficient to support an award of punitive damages.**

The First Amended Complaint alleges that defendants foreclosed on plaintiffs' property with actual knowledge that the Notice of Default had been filed by a Trustee who was not actually Trustee at the time, and that the Trustors were not actually in default at the time it was filed.  As shown in *Kachlon v. Markowitz, supra*, 168 Cal.App. 4th 316, that a beneficiary with actual knowledge that the Trustor was not in default nevertheless proceeded to foreclose is sufficient to support a jury verdict that the Beneficiary "acted "intentionally, fraudulently and in conscious and callous disregard for the

1  rights of the Markowitzes.'"" (*Id*. at 345.)  The First Amended  Complaint, therefore, alleges sufficient

2  facts to support a claim for punitive damages.

3  The facts alleged in the First Amended Complaint are also sufficiently specific to put the

4  defendants on notice of the basis of the claim for punitive damages.  In the case cited by defendants in

5  support of their argument that the First Amended Complaint is not sufficiently specific, *Smith v.*

6  *Superior Court* (1992) 10 Cal.App.4th 1033, the action was for legal malpractice.  The defendants

7  moved to strike, inter alia, the plaintiff's claim for punitive damages, which was denied by the trial

8  court.  The Court of Appeal issued a writ of mandate that the punitive damages claim be stricken

9  because the complaint alleged only professional negligence or breach of contract, to which were added

10  conclusory language that the defendants acted maliciously.  (*Id*. at 1041-1042.)  Here, the First

11  Amended Complaint alleges a great deal more than negligence; it alleges that the defendants pursued a

12  foreclosure with actual knowledge that the trustors were not in default.  As noted in *G.D. Searle & Co.*

13  *v. Superior Court* (1975) 49 Cal.App.3d 22, 29, cited by *Smith*, the pleading requirements to establish

14  liability for punitive damages based on an "intentional wrong" are much more relaxed than those

15  required in the case of a "nondeliberate injury."

16  **8.**    **The First Amended Complaint alleges facts sufficient to support an award of**

17  **attorneys' fees.**

18  Paragraph 18 of the First Amended Complaint alleges that, "The underlying Promissory Note

19  and Deed of Trust contain provisions for an award of attorneys' fees to a prevailing party in an action

20  thereon, and those provisions were not modified by the loan modification agreement."

21  **9.**    **The Lis Pendens should not be expunged where the First Amended Complaint**

22  **alleges a claim of title to real property.**

23  Defendants seek to expunge the Lis Pendens based on its arguments in support of the Motion to

24  Dismiss, that the First Amended Complaint does not state a claim for relief, at all.  Because, as set

25  forth above, the First Amended Complaint does state a claim for relief, the Lis Pendens should not be

26  expunged.

27  **CONCLUSION**

28  The Motion to dismiss should be denied in its entirely.  If, however, this Court were to grant it

**OPPOSITION TO MOTION TO DISMISS**    --   12

in any part, it should be with leave to amend.

Dated:  August 26, 2011                    _____/S/_____

Joshua Genser
Attorney for Plaintiff